UNITED STATES v. PETERSON.

(District Court, E. D. Wisconsin. October 23, 1894.)

FEDERAL COURTS—JURISDICTION—HIGH SEAS.

The district court of the Eastern district of Wisconsin has no jurisdiction of an indictment for an assault committed on a vessel on Lake Huron within the boundary of the jurisdiction of the Eastern district of Michigan.

On Demurrer to Indictment against John G. Peterson.

J. H. M. Wigman, U. S. Atty.

Markham & Nickerson, for defendant.

SEAMAN, District Judge. An indictment is presented charging the defendant, master of the schooner Belle Brown, for an assault with a dangerous weapon upon one of the crew. It is alleged that the vessel belonged to a citizen of the United States, and the assault was committed thereon, "on waters on the high seas, and within the admiralty and maritime jurisdiction of the United States, and out of the jurisdiction of any particular state, to wit, upon the waters of Lake Huron." The defendant demurs to the indictment, alleging that this court is without jurisdiction of the offense charged; and, for the purpose of having the question determined at this stage, the district attorney requests that the following undisputed facts be considered as though set forth in the indictment: That the vessel was within 25 or 30 feet of a bridge pier, known as "Spencer's Pier," in the state of Michigan, on the west shore of Lake Huron, where the offense was committed; that the crew were warping the vessel to the pier, for landing, by means of rope and tackle; that it was upon the open waters of the lake, and not in any harbor or bay. So considered, the question of jurisdiction is fairly presented.

Section 5346, c. 3, tit. 70, of the United States Revised Statutes provides:

"Every person who, upon the high seas, or in any arm of the sea, or in any river, haven, creek, basin or bay within the admiralty jurisdiction of the United States, and out of the jurisdiction of any particular state, on board of any vessel belonging in whole or in part to the United States, or any citizen thereof, with a dangerous weapon, or with intent to perpetrate any felony, commits an assault on another, shall be punished by a fine of not more than three thousand dollars, and by imprisonment at hard labor not more than three years."

An act of congress of September 4, 1890 (26 Stat. 424, c. 874), provides for the punishment of any person who commits offenses mentioned in the chapter which contains the above section, upon United States vessels, "being on a voyage upon the waters of any of the Great Lakes" (naming them, and including Lake Huron), or connecting waters; and "the circuit and district courts of the United States, respectively," are vested with the same jurisdiction in respect of such offenses that they possess in respect of offenses in said chapter.

The recent decision of the supreme court in U. S. v. Rodgers, 150 U. S. 249, 14 Sup. Ct. 109, is based upon section 5346, as the offense there charged arose prior to the enactment of 1890, and the opinion

states that the latter act does not enter into consideration. It was held that the Great Lakes came within the general designation of "high seas,". and that the district court of the Eastern district of Michigan had jurisdiction of an offense described in section 5346, which was committed upon an American vessel while in the Detroit river, and beyond the boundary line between the United States and Canada, and hence within the territorial limits of the Dominion of Canada. If the statute of 1890 had been in force at the time of the alleged offense, it is not probable that any question would have been raised on the state of facts there shown, for the power of congress to legislate with reference to the Great Lakes, as within the admiralty jurisdiction of the United States, is now firmly established. The opinion of Justice Brown, while district judge, in the Case of Byers, 32 Fed. 404, clearly states this power of congress, and seems to have suggested the legislation of 1890. That decision is only overruled by the Rodgers Case in so far as it held that the Great Lakes were not within the designation of "high seas" under the statutes then existing.

In view of the controlling force of the provision contained in the second section of the third article of the constitution of the United States, I deem it unnecessary to enter into an inquiry with reference to the distance of the vessel from the Michigan shore, or of the effect of any attachment of her lines to or near the pier while warping the vessel for a landing. The constitutional provision requires that the trial of all crimes "shall be held in the state where the said crime shall have been committed; but, when not committed within any state, the trial shall be at such place or places as the congress may by law direct." The contention is, in support of the indictment, that the words "out of the jurisdiction of any particular state," as recited in section 5346, do not qualify the term "high seas" therein, but only the localities which are subsequently named. On the open coast of the ocean there is no extension of the territorial boundaries of the state, except the marine league, conceded by international law for certain purposes, well defined in Manchester v. Massachusetts, 139 U. S. 240, 11 Sup. Ct. 559. Even there, as stated in 1 Bish. Cr. Law, § 143, where an offense is committed "upon seas washing an open coast, and within the marine league belonging to the territory of the state, still it is punishable as committed against the United States." See U. S. v. Grush, 5 Mason, 290, Fed. Cas. No. 15,268, for a clear exposition by Mr. Justice Story of the original statute of 1825 (now section 5346), and of which that distinguished judge was the reputed author. But it is unnecessary to decide whether the terms "out of the jurisdiction of any particular state" would qualify or apply to the term "Great Lakes," as employed in the act of 1890, because it is clear that the vessel was within the limits and jurisdiction of the courts of the United States for the Eastern district of Michigan, when the alleged offense was committed, and hence within the constitutional inhibition of trial in this court.

By section 538, Rev. St. U. S., the Eastern district of Michigan "includes all the territory and waters of said state not included within" the boundaries there given of the Western district, which leaves the

waters of Lake Huron in the Eastern district. By treaties between the United States and Great Britain, a certain line through the center of Lake Huron was established as the national boundary line, but with jurisdiction retained by each nation over its vessels, as a portion of its territory, while navigating such waters, irrespective of the boundary line. The act admitting the state of Michigan as one of the states of the Union establishes the same line as the easterly and northerly boundary line of that state. In Illinois Cent. R. Co. v. Illinois, 146 U. S. 387, 13 Sup. Ct. 110, it is clearly recognized that the limits of the states bordering upon the Great Lakes extend to the center of the lakes, respectively. In U. S. v. Bevans, 3 Wheat. 336, Chief Justice Marshall says the extent of jurisdiction which a state possesses "is coextensive with its territory; coextensive with its legislative powers." It is held in U. S. v. Rodgers, supra, that this boundary line does not change the character of the lakes as high seas, nor impair "the jurisdiction of the United States to regulate vessels belonging to their citizens navigating those waters, and to punish offenses committed upon such vessels;" but this remark is only with reference to the right or assertion of national jurisdiction, which becomes paramount to that of the state in matters of national commerce and navigation. The actual limits of the state are not changed by this view. The place of this alleged offense is within the state of Michigan, and within the territory assigned to the district and circuit courts of the Eastern district of Michigan. In U. S. v. Jackalow, 1 Black, 484, the supreme court states the rule which governs here:

"Crimes committed against the laws of the United States out of the limits of a state are not local, but may be tried at such place as congress shall designate by law, but are local if committed within the state. They must then be tried in the district in which the offense was committed."

There the alleged offense occurred upon Long Island Sound, which is recognized and charged as of the "high seas." The issue, as there declared, was whether or not it was committed outside the jurisdiction of any particular state, "because, if not, inasmuch as it was not committed within the state of New Jersey [where the indictment was found], the circuit court of the district of that state had no jurisdiction." The case of U. S. v. Dawson, 15 How. 467, states the same rule imposed by this constitutional provision. The statute (section 730, Rev. St. U. S.) under which this jurisdiction is asserted is clearly in accord with this provision, as it authorizes trial in a district where the offender is found or first brought, in case the offense be committed "out of the jurisdiction of any particular state or district," and not otherwise.

The question here presented would not arise in a case of offense committed upon the open coast of the ocean or great seas forming external boundaries of the nation, because the boundaries of the state and district are not extended upon such waters, as they are upon the Great Lakes and upon Long Island Sound. The constitutional provision would have no room for application to the former case, but it does apply to the latter. Whether Lake Huron be regarded as high seas, in the light of the Rodgers decision, or as one of the Great Lakes, under the legislation of 1890, the boundaries and

jurisdiction of the Eastern district of Michigan are not changed, but extend to the center of the lake, and include the place of this alleged offense. To confer jurisdiction upon this court, it must appear that the offense was committed outside the Michigan boundary line, beyond the Eastern district of Michigan; and I am inclined to the opinion that the indictment must so allege where an offense upon Lake Huron is charged. Upon the admitted facts, the demurrer must be sustained. The second indictment is within the same rule, and demurrer is sustained.