## CHARLES F. FROST

### *vs.*

## THE WASHINGTON COUNTY RAILROAD CO.

Washington. Opinion December 23, 1901.

*Waters. Const. Law. Commerce. Railroads. Spec. Laws, 1893, c. 454. Act of Congress, April 12, 1900, c. 187. U. S. Const. Art. 1, § VIII, Par. 3.*

1. Under the commerce clause of the United States Constitution, Art. 1, § VIII, par. 3, Congress has the power in the interests of commerce to authorize the obstruction and even closing of the navigation of a tide-water channel.

2. Congress having by an Act, approved April 12, 1900, "declared to be a lawful structure" the trestle built and maintained by the Washington County Railroad Company across the tide-water channel between Pleasant Point and Carlow Island in the town of Perry, the court cannot now consider the question whether the trestle is "so constructed as not unnecessarily to obstruct the navigation" of that channel as required by the Act of the State Legislature authorizing the construction of the trestle.

3. The proviso in the Act of Congress, "Provided that such modifications are made in the trestle's present position, condition and elevation as the Secretary of War may order in the interests of navigation," is of the nature condition subsequent, and the trestle must be regarded by the court as a lawful structure until the Secretary of War shall order modifications which the company shall neglect to make. It does not appear in this case that any modifications have been ordered.

4. The right of navigation in a tide-water channel is not an individual private property-right, protected from governmental action by the constitutional provision prohibiting the taking of private property without just compensation. It is a public right only, which may be abridged or extinguished at the pleasure of the sovereign acting for the public, and without making compensation to those who were wont to use it. The right is always subject to be thus extinguished, and individuals should not assume it to be permanent.

5. The fact that the building and maintenance of the trestle and the consequent closing of the channel by the railroad company under the authority of the Legislature and of Congress, has seriously damaged the business of the plaintiff and the selling value of his property adjoining the channel, does not entitle him to compensation from the railroad company, none of his property having been entered upon or used by the company. It is the common case of damnum absque injuria. The company has not wronged the plaintiff.

On report.    Judgment for defendant.

Action on the case brought to recover damages claimed to have been sustained by plaintiff by reason of the building and maintenance, by the defendant company, of a trestle for its railroad across the channel leading to a tide-water cove in Passamaquoddy Bay, whereby access was cut off from plaintiff's store and mill to the high seas.

It was admitted that the railroad was duly located and the location filed with and approved by the Board of Railroad Commissioners, and that that body had granted a certificate to operate the road over the trestle.

The cove was closed to vessels by reason of the trestle May 20, 1898, and has remained so ever since. An Act of Congress, approved April 12, 1900, declared the trestle to be a lawful structure. Plaintiff introduced a certified copy of this act as reported back to the Senate from committee, with alterations showing that the bill was not enacted in its original form. The following words were stricken out, viz:—"In their present position, condition, and elevation, and

shall be so held and taken to be, anything in any law or laws of the United States to the contrary notwithstanding;" also the whole of § 2, viz:—"That the Washington County Railroad Company, its successors or assigns, is authorized to have and maintain its said trestles at their present site and elevation and in their present condition," and in place of the stricken portions was inserted the proviso at the end of the bill as printed in the opinion.

The changes in the bill were on the recommendation of the War Department.

*G. M. Hanson, A. St. Clair,* and *L. H. Newcomb,* for plaintiff.

The right which a riparian owner has in a navigable stream when traveling upon it . . . must be distinguished from his right to reach navigable water from his own land. The former right is one which belongs to him as one of the public. The latter is a private one incident to the ownership of the adjoining property. If it is taken for the benefit of the public he is entitled to compensation.

In *Rose* v. *Groves,* 5 M. & G. 613, an inn-keeper recovered damages against the defendant for wrongfully preventing the access of guests to his house, situated on the river Thames, by placing timbers in the river opposite the inn. Tindal, C. J., said: "This is not an action for obstructing the river, but for obstructing the access to the plaintiff's house on the river."

In *Lyons* v. *Fishmongers' Company,* 1 App. Cases, 662, Lord Cairns said:—"As I understand the judgment in *Rose* v. *Groves,* it went not upon the ground of public nuisance, accompanied by particular damage to the plaintiff, but upon the principle that a private right of the plaintiff had been interfered with. . . . . Independently of the authorities, it appears to me quite clear that the right of a man to step from his own land into a highway is something quite different from the public right of using a highway."

Plaintiff had all the rights to use the waters of the cove and channel in common with the public, and in the same manner; but in addition he had a right of navigation of a very different character connected with an exclusive right of access to and from a particular wharf, which was not a right in common with the rest of the public, for other members of the public had no access at this particular

place. This becomes a form of enjoyment of the land, a disturbance of which may be vindicated in damages.

Legislative authority has been exercised as far as impeding or impairing navigation, but no case justifies destroying navigation.

The altered appearance of the bill, as finally enacted, shows the futility of plaintiff's attempt to legalize the structure, as it existed, and that some act by the Secretary of War pursuant to the bill was necessary.

"No intention to completely obstruct navigation appears in either act. The fact that a bridge is a public benefit will not prevent its being a nuisance if it obstructs navigation." *Devoe* v. *Penrose Bridge Co.*, 3 American Law Register, 79.

*G. A. Curran* and *B. B. Murray*, for defendant.

Bridges which are connecting parts of turnpikes, streets and railroads, are means of commercial transportation as well as navigable waters, and the commerce which passes over a bridge may be much greater than would ever be transported on the water it obstructs. Ancient Charters, etc., 148; *Gilman* v. *Phila.*, 3 *Wall.*, 725; *Pound* v. *Turck*, 95 U. S. 462; *Cardwell* v. *American Bridge Co.*, 113 U. S. 205; *Willamette Iron Bridge Co.*, v. *Hatch*, 125 U. S. 8.

It is competent for the legislature to give retrospectively the capacity it might have given in advance. Cooley's Const. Lim., p. 455, 6th Ed.; *Single* v. *Supervisors of Marathon*, 38 Wis. 363; *Allen* v. *Archer*, 49 Maine, 346; *Oriental Bank* v. *Freese*, 18 Maine, 109, 36 Am. Dec. 701.

For any lawful acts done by the defendants in the construction of their road the plaintiff will not be entitled to recover damages, although he may have been indirectly injured. *Rogers* y. *Kennebec & P. R. R. Co.*, 35 Maine, 319; *Spring* v. *Russell*, 7 Greenl. 273; *Callender* v. *Marsh*, 1 Pick. 418; *Gowen* v. *Penobscot R. R. Co.*, 44 Maine, 140. To sustain his action plaintiff must show that the damage he has sustained, if any, "is not common to others", to use the expression of Lord Coke. *Stetson* v. *Faxon*, 19 Pick. 147, 31 Am. Dec. 123; *Low* v. *Knowlton*, 26 Maine, 128, 45 Am. Dec. 100; *Brown* v. *Watson*, 47 Maine, 161, 74 Am. Dec. 482; *Holmes* v. *Corthell*, 80 Maine, 31.

Plaintiff does not show that the injury to him is different in kind than that suffered by other members of the public; simply that the present consequential damage to him may be greater in degree than to others. The case has no analogy to those in which an obstruction in a navigable stream sets back the water upon the plaintiff's land. *Blackwell* v. *Old Colony R. R. Co.*, 122 Mass. 1; *Davidson* v. *Boston & Maine R. R.* 3 Cush. 92; *Willard* v. *City of Cambridge*, 3 Allen, 574; Wood on Nuisances, Vol. 1, p. 14; Waite's Actions and Defenses, Vol. 4. p. 730; Wood on Railroads, Vol. 2, p. 1127; Cooley on Torts, 731.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, SAVAGE, PEABODY, JJ.

EMERY, J. A small tide-water bay or cove makes westerly from Passamaquoddy Bay into the land in the town of Perry. The entrance to this cove from the Bay is a navigable channel between Pleasant Point on the mainland on the north and Carlow Island on the south, and this channel for the purposes of this case may be regarded as the only practicable passage by water in and out of the cove. For several years prior to 1898, and since, the plaintiff has owned a tract of land on the shore of this cove about three-quarters of a mile up the cove from the entrance. On this tract of land prior to 1898, he had built a wharf into the cove and had built a grist mill, and was carrying on a business of buying, grinding and selling grain, etc., and also was dealing in wood, country produce, etc. The most of his transportation of the merchandise of his business was by water to and from his wharf, in and out of the cove, through the entrance above described. From this wharf and cove vessels and boats could proceed by sea to other coast states and to the coasts of foreign nations.

The plaintiff had been carrying on this business in this manner through this navigable channel for several years prior to 1898, when the Washington County Railroad Company, in building its railroad into Eastport, built and has since maintained and now maintains a trestle across this channel between Pleasant Point and Carlow Island

for the passage of its trains. This trestle practically prevents any navigation of that channel and any transportation by water in and out of the cove. This event has greatly injured the plaintiff's business and the value of his wharf and mill, although the railroad company has not taken nor trespassed upon any of his land or other property, but only interfered with his right of navigation through the channel into the bay and sea. He has brought this action on the case against the railroad company to recover compensation for the injury thus done him by the company's acts in building and maintaining that trestle.

I. The first question is, whether the defendant company has any legal right to build and maintain a trestle of that character at that place with such effect. It was authorized by its charter (Special Laws of 1893, ch. 454) to locate, construct, maintain and operate a railroad from some point on the Maine Central Railroad in Hancock County to Calais, including a branch to Eastport. It was also empowered by its charter (section 5) "to erect and maintain bridges across tide waters . . . which its railroad may cross; provided they shall be so constructed as not unnecessarily to obstruct the navigation of such waters."

Under this charter the defendant company duly located its branch line to Eastport across this channel where the trestle now is, and this location was duly filed with the Railroad Commissioners and the County Commissioners and was duly approved by them. The defendant company thereupon, in 1898, built the trestle on the line of the approved location to support its railroad track and now maintains it as a part of its through railroad from Eastport to its connection with the Maine Central Railroad and with the railroad system of the United States and Canada. The Railroad Commissioners gave authority to the company to operate its railroad over the trestle as now constructed.

The plaintiff, however, contends that all this gave the defendant company no authority to construct and maintain the trestle it has; viz:—a trestle so constructed that it unnecessarily obstructs and even entirely prevents the navigation of this channel and cove. He claims

that the proviso above quoted in § 5 of its charter limits its authority to build bridges and trestles to those of such character and construction as will not unnecessarily obstruct navigation as described, to his detriment,—and hence this trestle is, as to him at least, an unlawful structure not authorized by the company's charter.

To meet this contention of the plaintiff's, the defendant relies upon an act of the Congress of the United States, approved April 12, 1900, (ch. 187) of the following tenor, viz:—"Be it enacted etc.: That the trestle on the Eastport Branch of the Washington County Railroad Company, being the property of the Washington County Railroad Company, and running from the extreme point of land south of Pleasant Point in the town of Perry county of Washington and State of Maine to the extreme northern end of Carlow's Island in the town of Eastport in said county and State; and a certain other trestle, also the property of said railroad company, in the East Machias River in said county of Washington and State of Maine, at the extreme end of said river near the village of East Machias in said county and State, be, and both of said trestles hereby are, declared to be lawful structures: Provided, That such modifications are made in their present position, condition, and elevation as the Secretary of War may order in the interests of navigation." It is not disputed that the trestle first described in the above act is the trestle in question.

We have now to consider the effect of this act of Congress upon the question whether the trestle as now built and maintained is a lawful or unlawful structure as to the plaintiff. Under the commerce clause of the constitution of the United States (Art. 1, § VIII, par. 3.) Congress undoubtedly has full and exclusive jurisdiction over navigation and commerce in this channel whenever it chooses to exercise that jurisdiction. Whatever navigability existed in this channel and cove to and from the plaintiff's wharf, was directly available to commerce with other States and foreign nations over the waters of the cove, channel, bay and the great highway of the ocean. "Commerce among States does not stop at a state line. Coming from abroad, it penetrates wherever it can find navigable waters reaching from without into the interior, and may follow them up as

far as navigation is practicable." (*Gilman* v. *Philadelphia*, 3 Wall. p. 725. In *Cardwell* v. *American River Bridge Co.*, 113 U. S. 205, the American River, a small branch of the Sacramento, though entirely within the State and navigable only by barges and small steamboats, was yet said to be a navigable water of the United States and as such under the control of the government of the United States, as to its navigation. So Grand River, though wholly within the State of Michigan and flowing into Lake Michigan, was held to be within the commerce clause of the U. S. Constitution. *The Daniel Ball*, 10 Wall. 557. When, therefore, Congress acts and so far as it acts in the premises, the jurisdiction of the State government, judicial as well as legislative, recedes. If Congress declares a bridge or other structure over or on navigable waters to be an unlawful structure, the State legislature cannot make it lawful nor can the State court declare it to be lawful. So, if Congress declares the structure to be lawful, neither the State legislature nor the State court can, even upon the most plenary proof, declare it unlawful as interfering with navigation. The judgment of Congress is conclusive, not to be questioned by any court. In the *Wheeling Bridge* case, 18 Howard, 421, the U. S. Supreme Court had, upon allegation and proof, adjudged the Wheeling Bridge across the Ohio River to be an unlawful structure as obstructing the navigation of the river, and had decreed that it should be removed or elevated so as to permit free navigation of the river. Then Congress passed an act declaring the bridge to be a lawful structure in its then position and elevation. The court held that this act of Congress conclusively determined this bridge to be a lawful structure at its then elevation, and that the court could not proceed further in the matter. In the *Clinton Bridge* case 10 Wall. 454, the plaintiff sought to prove that the bridge across the Mississippi River was a serious and dangerous obstruction to navigation to his special detriment. After the erection of the bridge, Congress passed an act declaring that the bridge (describing it) "shall be a lawful structure." The court held that the act of Congress took the question from the court. The action was thereupon dismissed without hearing any evidence. In *Miller* v. *The Mayor of New York*, 13 Blatchford, 469, a case concerning the Brooklyn

bridge, the U. S. Circuit Court considered the effect of an act of Congress declaring a bridge over navigable waters to be a lawful structure, and after reviewing the authorities, said: "It results from the cases considered, that the authority of Congress is paramount in the regulation of commerce under the constitution; and that its determination in respect to interference with navigation by obstructions thereto is conclusive. What it authorizes may be justified upon its authority. What it forbids is necessarily unlawful. Nor is it to be forgotten that this power of Congress is at all times capable of exercise. If it should turn out that the judgment of Congress has been mistaken and that navigation is injuriously affected, it can by law require the bridge to be altered or removed and can adapt its regulation of commerce to its view of the public interests." This language was quoted with approval by the New York Court of Appeals, in *People ex rel. Murphy* v. *Kelley*, 76 N. Y. 475, and the decision was affirmed in *Miller* v. *Mayor*, 109 U. S. 385.

It must be apparent from the foregoing authorities, and from the nature of the case, that if Congress has declared this trestle, as now constructed and maintained, to be a lawful structure, this court cannot hear the plaintiff to complain that it unlawfully impedes him in navigating the channel and cove. In such case, the question of lawfulness or unlawfulness of the structure has been taken from the court.

But the plaintiff contends that the act of Congress has not declared the trestle to be a lawful structure in presenti, but only in futuro, in case and when the defendant company shall perform the condition of the proviso of the act, viz:—"Provided that such modifications, are made in their [its] present position, condition and elevation as the Secretary of War may order in the interests of navigation." He says, and truly, that it does not appear that the defendant company has made any such modifications, and he urges that such modifications are a condition precedent to the trestle becoming a lawful structure. But it does not appear, either, that the Secretary of War has ordered any modifications, or that he deems any to be necessary in the interests of navigation. The proviso is evidently a condition subsequent only. The trestle is declared to be a lawful structure in pre-

senti.   It is made such, until the defendant company shall fail to
make the modifications ordered by the Secretary of War.   If the
Secretary does not order any modifications, and apparently he has
not, then the trestle remains a lawful structure if kept up in its then
present condition.   It was competent for Congress to thus fix the
matter, *Miller* v. *Mayor of N. Y.*, etc. 109 U. S. 368; *South Carolina*
v. *Georgia*, 93 U. S. 13; and Congress having done so, persons desir-
ing the removal or modification of the trestle as an obstruction to
navigation should apply to Congress or to the Secretary of War.
The courts have now no jurisdiction in the matter.

II.   The plaintiff further contends that even if the trestle in its
present condition is a lawful structure, and is lawfully maintained by
the defendant company, he has nevertheless suffered much pecuniary
loss from the action of the defendant company in building and main-
taining it and should be re-imbursed therefor by the company.   He
concedes that the company has not taken, nor even touched, any of his
tangible property, real or personal.   The trestle is three-fourths of a
mile distant from the property described in this suit.   But the closing
of the channel by the trestle has undoubtedly reduced the earning
powers and selling value of his property on the cove, and has lessened
the profits of the business he was carrying on there.   He claims he
has a cause of action against the railroad company for the injury thus
done to his property and business.

This claim cannot be sustained.   The only right of the plaintiff
interfered with by the defendant company was his right of navigation
by water in and out of the cove through the channel.   This right of
the plaintiff, however, was not his private property, nor even his pri-
vate right.   It could not be bought, sold, leased or inherited.   He
did not earn it, create it or acquire it.   He did not own it as against
the sovereign.   The right was the right of the public, the title and
control being in the sovereign in trust for the public and for the ben-
efit of the general public, and not for any particular individual.   The
plaintiff only shared in the public right.   He had no right against
the public.   The sovereign had the absolute control of it and could
regulate, enlarge, limit or even destroy it, as he might deem best for

the whole public, and this without making or providing for any compensation to such individuals as might be inconvenienced or damaged thereby. The sovereign cannot take private property for public uses without providing for just compensation to its owner, but this constitutional provision does not limit the power of the sovereign over public rights. If, in the evolution of life and commerce, the sovereign comes to believe that the public good will be increased by the creation of some new or additional means of communication and commerce at the expense or even sacrifice of some older one enjoyed merely as a public right, the sovereign can so ordain, even to the detriment of individuals. If, in the judgment of the sovereign, a railroad across a navigable channel of water and completly obstructing its navigation is of more benefit to the public than the navigation of the channel, he has the unrestricted power to thus close the channel to navigation, without making compensation to those who had been wont to use it. Every individual making use of a merely public privilege must bear in mind that he may be lawfully deprived of that privilege whenever the sovereign deems it necessary for the public good, and he must order his business accordingly. Unless the person authorized by statute to obstruct or close a navigable channel is required by the statute to make compensation to persons injured by such action, he is under no legal obligation to do so. In such case the inconvenience and loss however great are damnum absque injuria. The company has damaged the plaintiff but it has not wronged him. The defendant company has not interfered with the private property nor private rights of the plaintiff. It has lawfully, by express authority from the sovereign, merely abridged the use of a public right which was within the exclusive control of the sovereign. For this lawful act it is not obliged to make any compensation to the plaintiff any more than to all other persons who might have occasion, however seldom, to navigate the channel.

The authorities which support the foregoing statement of the law are numerous and uncontradicted. We cite a few only: *Spring* v. *Russell,* 7 Maine, 273; *Rogers* v. *K. & P. R. R. Co.,* 35 Maine, 319; *Gowen* v. *Pen. R. R. Co.,* 44 Maine, 140; *Brooks* v. *Cedar Brook, etc.,* 82 Maine, 17, 17 Am. St. Rep. 459, 7 L. R. A. 460;

*Miller* v. *Mayor of N. Y.* 109 U. S. 385; *Gilman* v. *Philadelphia*, 3 Wall. 713; *Pound* v. *Turck*, 95 U. S. 459; *Hamilton* v. *Vicksburg R. R. Co.* 119 U. S. 280; *Escanaba Co.* v. *Chicago*, 107 U. S. 678; *Cardwell* v. *Am. River Bridge Co.*, 113 U. S. 205; *Scranton* v. *Wheeler*, 179 U. S. 141.

It follows that the plaintiff has no legal claim to compensation and cannot sustain the action. We regret that the plaintiff has been damaged by this new railroad being lawfully built across the channel he was wont to use, but he is only one of many thousands who are being individually damaged every day by the frequent lawful changes in the means and methods of manufacture and commerce, and yet cannot be said to be wronged by illegal acts.

*Judgment for the defendant.*