UPPER LAKES SHIPPING, LTD., Respondent, v. SEAFARERS' INTERNATIONAL UNION OF CANADA and others, Appellants.

*January 7—February 5, 1963.*

For the appellants there was a brief by *Raskin & Zubrensky*, attorneys, and *Max Raskin* and *Herbert S. Bratt* of counsel, all of Milwaukee, and oral argument by *Mr. Max Raskin* and *Mr. Bratt*.

For the respondent there was a brief by *Foley, Sammond & Lardner,* attorneys, and *Herbert P. Wiedemann* and *Eugene C. Daly* of counsel, all of Milwaukee, and oral argument by *Mr. Wiedemann.*

WILKIE, J.   There are three principal issues on this appeal:

1. Does the National Labor Relations Act pre-empt the state of Wisconsin from taking jurisdiction in this controversy?

2. If there is no federal pre-emption, is the plaintiff (as a foreign corporation without a certificate of authority from the secretary of state) precluded from invoking the jurisdiction of the courts of this state?

3. Was the trial court correct in enjoining the picketing by defendant?

*Was there pre-emption by federal government?*  On the question of pre-emption this case is governed by *Benz v. Compania Naviera Hidalgo* (1957), 353 U. S. 138, 77 Sup. Ct. 699, 1 L. Ed. (2d) 709.

In that case the S. S. Riviera, owned by a Panamanian corporation and flying a Liberian flag, sailed into Portland, Oregon, for repairs, to load a cargo of wheat, and to complete an insurance survey.  The crew was made up entirely of nationals of countries other than the United States, principally German and British.  On or about September 9, 1952, the members of the crew went on strike on board ship.  On September 26th the striking crewmen left the ship.  The crew picketed the ship from September 9th to October 13th. The crew had designated the Sailors' Union of the Pacific as their collective-bargaining representative.  This latter union picketed the ship until restrained by an injunction. Damages were later awarded to the employer.  All the picketing was peaceful but was enjoined because the purpose of the picketing was illegal.

The union and their representatives contended that the trial court was without jurisdiction because the Labor Management Relations Act of 1947 had pre-empted the field. The judgments were based on a common-law theory that the picketing was for an unlawful purpose under Oregon law. The court ruled that there was no federal pre-emption and in its opinion stated (353 U. S. 138) :

"It [the controversy] was between a foreign employer and a foreign crew operating under an agreement made abroad under the laws of another nation. The only American connection was that the controversy erupted while the ship was transiently in a United States port and American labor unions participated in its picketing. (p. 142.)

"Our study of the act leaves us convinced that Congress did not fashion it to resolve labor disputes between nationals of other countries operating ships under foreign laws. The whole background of the act is concerned with industrial strife between American employers and employees. (p. 143.)

"For us to run interference in such a delicate field of international relations there must be present the affirmative intention of the Congress clearly expressed." (p. 147.)

In the case at bar, the plaintiff Upper Lakes is a Canadian employer and its crew is composed entirely of foreign seamen, sailing under a Canadian flag, who were picketed by another Canadian union while the ship involved was transiently in an American port. Because there were no more internal United States contacts and controls in the instant case than in the *Benz Case, supra,* we are convinced that under the ruling in that case, there was no federal pre-emption here.

Defendant union contends that the ship makes many voyages to Milwaukee each year. Upper Lakes ships may visit Milwaukee from four to six times during the season. Furthermore, in *Lauritzen v. Larsen* (1953), 345 U. S. 571, 73 Sup. Ct. 921, 97 L. Ed. 1254, the United States supreme court dismissed the argument that frequent and regular visits

will of themselves bring the subject matter under federal jurisdiction.

The defendant cites two cases decided by the national labor relations board that hold that the state of Wisconsin is pre-empted from asserting jurisdiction in this case: *West India Fruit & Steamship Co.* (1961), 130 N.L.R.B. 343, and *United Fruit Co.* (1961), 134 N.L.R.B. 287. It is true that in both of these cases the national labor relations board did retain jurisdiction over the controversy. But both of these cases can be easily distinguished from the case at bar. In the *West India Fruit Case, supra,* the ship sailed only between Cuba and the United States and was owned by a United States corporation. In the *United Fruit Case, supra,* the ships were owned by a subsidiary which was in turn completely owned, operated, and controlled by a United States corporation. The national labor relations board held there were substantial United States contacts which brought the case under the jurisdiction of the board. In oral argument the defendant also cited a recent supreme court decision *Ex parte George* (1962), 371 U. S. 72, 83 Sup. Ct. 178, 9 L. Ed. (2d) 133. In that case the supreme court of the United States held that the state of Texas did not have jurisdiction over a labor dispute involving the American Oil Company and the National Maritime Union. The labor union peacefully picketed a refinery operated by a subsidiary of American that had a valid collective-bargaining agreement with the Oil, Chemical & Atomic Workers International Union. The court held that the district court (of Texas) was without jurisdiction to enforce contempt proceedings against the union representative who did not abide by that court's injunction against the picketing of the refinery.

" 'In the absence of the board's clear determination that an activity is neither protected nor prohibited or of compelling precedent applied to essentially undisputed facts, it is not for this court to decide whether such activities are subject to state jurisdiction.' *San Diego Building Trades Council,*

*etc., v. Garmon,* 359 U. S. 236, 246, 79 S. Ct. 773, 780, 3 L. Ed. 2d 775. The Texas supreme court held that petitioner's conduct was neither arguably prohibited nor arguably protected by the Act. (Tex.), 358 S. W. (2d) 590. We disagree. Even assuming, without deciding, that the picketing would not fall within the prohibitions of sec. 8 (b) (1) (A) or sec. 8 (b) (4) (i) (B) of the National Labor Relations Act, as amended, we hold, in light of the district court's finding *that American wholly owns the subsidiary* and 'directs and controls all of . . . [its] activities,' that petitioner's picketing was conduct at least arguably protected by sec. 7 of the act." (Emphasis ours.) (371 U. S. at p. 73.)

Thus a United States corporation was a real party to the dispute and that fact in itself also distinguishes the above case from the *Benz Case, supra,* and the case at bar.[1]

*Is the plaintiff precluded from invoking the jurisdiction of the courts of this state?* Sec. 180.801 (1), Stats., states:

---

[1] The defendant has also called to our attention another case now pending in the United States supreme court, *Incres Steamship Co. v. International Maritime Workers Union* (1961), 10 N. Y. (2d) 218, 176 N. E. (2d) 719, certiorari granted, 368 U. S. 924, 82 Sup. Ct. 367, 7 L. Ed. (2d) 189. The ship involved, although foreign-registered, foreign-crewed, and foreign-owned, has an American port as one of the two termini of its fixed, regular shuttle service, and conducts an important part of its business from a New York city office and has no office at all in Liberia, the country whose flag its vessels fly. The distinction between that case and the case at bar is obvious and we see no reason for this court to withhold its decision on the case at bar until such time as the United States supreme court rules in the *Incres Steamship Co. Case.*

The plaintiff, Upper Lakes, cites *Empresa Hondurena De Vapores, S. A. v. McLeod* (2d Cir. 1962), 300 Fed. (2d) 222, certiorari granted, 30 U. S. Law Week 3384 (U. S. June 11, 1962) (No. 858), which also is presently before the United States supreme court. In that case, the second circuit held that the N.L.R.B. did not have jurisdiction over the controversy in question because a Honduran ship, flying a Honduran flag, and manned by Honduran crews, although involved in United States commerce, was primarily engaged in the foreign commerce of Honduras. Here again, we also see no reason for withholding our decision in the case at bar until a United States supreme court ruling in that case.

"A foreign corporation shall procure a certificate of authority from the secretary of state before it shall transact business in this state . . ."

Sec. 180.847 (1), Stats., states:

"No foreign corporation transacting business . . . in this state without a certificate of authority, . . . shall be permitted to maintain . . . a civil action . . . in any court of this state, until such corporation shall have obtained a certificate of authority."

Based upon the interpretation of these two statutes, the defendant argues that the plaintiff Upper Lakes is precluded from procuring an injunction because (1) it is a foreign corporation transacting business in the state of Wisconsin, and (2) it has not obtained a certificate of authority from the secretary of state of Wisconsin to transact business in this state.

There is no question but that a state has the right to require a foreign corporation to obtain a certificate of authority to transact business in its jurisdiction. This is a matter of public policy to be determined by the legislature or by judicial decision. In *State ex rel. Goldwyn Distributing Corp. v. Gehrz* (1923), 181 Wis. 238, 194 N. W. 418, this court stated, at page 242:

"Whether such a foreign corporation may be permitted to become a suitor in the courts of any particular state, *provided no question of interstate commerce is concerned,* is exclusively a question of public policy to be declared through statute or by judicial decision in each particular state." (Emphasis ours.)

Thus, when a question of interstate commerce is concerned, the federal government has jurisdiction to regulate the actions of a foreign corporation engaged in interstate commerce. However, a state still has the power to impose conditions which restrict a foreign corporation engaged in interstate

commerce when in fact the foreign corporation is "transacting business" in the particular state. This court, in *Bulova Watch Co. v. Anderson* (1955), 270 Wis. 21, 70 N. W. (2d) 243, held, at page 27:

"In order for a foreign corporation to transact business in a state it must be physically present within the state in the sense of having an officer or agent there who is performing some act on behalf of the corporation."

The problem, therefore, in the case at bar is to determine whether or not the plaintiff Upper Lakes is "transacting business" in the state of Wisconsin. If the plaintiff Upper Lakes is found to be transacting business in this state, then it is precluded from invoking the jurisdiction of this state's courts because it did not in fact have a certificate of authority. If, on the other hand, it was not transacting business in this state, then the rule as stated in *In re Bell Lumber Co.* (1945), 149 Fed. (2d) 980, 984, would be applicable. That rule is as follows:

"If a foreign corporation is engaged in interstate commerce and as a mere incident to such commerce engages in business in Wisconsin it is not transacting business in Wisconsin so as to subject it to that state's regulations."

The federal court in the *Bell Lumber Co. Case, supra,* followed this court's ruling as stated in *Greek-American Sponge Co. v. Richardson Drug Co.* (1905), 124 Wis. 469, 102 N. W. 888. In this latter case the court stated, at page 476:

"The right of the state to prescribe the conditions upon which foreign corporations may carry on business within the state is undisputed and stands approved by the courts. When, however, such regulation imposes conditions which restrict them in their right, as foreign corporations, to make contracts pertaining to commerce between the states, then such legislation is an invasion of their constitutional right, under the

provision which confers upon Congress the power to regulate such commerce, and such legislation is invalid to that extent."

This court further stated in *Independent Tug Line v. Lake Superior Lumber & Box Co.* (1911), 146 Wis. 121, 126, 131 N. W. 408, that the true test in determining whether a foreign corporation is subject to the laws of Wisconsin is:

"Does the business in question constitute interstate commerce either because it is carried on between the states or affects them or because it is conducted on the high seas—'the common property of all mankind,'—and so becomes subject to such laws as the commercial nations of the world have established and is therefore relieved from local state regulations?"

Obviously the defendant argues that the plaintiff, Upper Lakes, is transacting business in the state of Wisconsin, and the plaintiff on the other hand alleges that it is a foreign corporation engaged in interstate commerce and as a mere incident to such commerce, it engages in business in Wisconsin.

The record discloses the following pertinent facts:

1. Plaintiff is a Canadian corporation engaged in interstate commerce.

2. It comes to Milwaukee ports approximately six times a year to transport grain from a Wisconsin corporation to a city in Canada for further transportation to Europe.

3. It is not acting as an agent for a Wisconsin corporation but is simply an independent contractor carrying grain from Wisconsin to Canada.

4. The plaintiff, Upper Lakes, employs an agent in Wisconsin who merely arranges for tugs, advises the captain as to port conditions, orders trimmers, and further arranges to berth the vessel. This agent does not represent the corporation in any other way.

On these facts it cannot be said that the plaintiff, Upper Lakes, is "transacting business" in Wisconsin, but is merely

engaged in interstate commerce and as a mere incident to said commerce, engages in business in Wisconsin.

The agent for Upper Lakes in Milwaukee is not the type of agent referred to in the *Bulova Watch Co. Case, supra,* who performs acts on behalf of a foreign corporation to such an extent that the corporation is thereby physically present in Wisconsin. The nature of the plaintiff's business here demands that it have someone in Milwaukee to arrange for berth, tugs, etc., but the presence of this agent does not result in the plaintiff's "transacting business" in Wisconsin.

*The temporary injunction against defendant's picketing.* Since the subject matter of this case is not pre-empted by federal legislation, and since the plaintiff, Upper Lakes, is not precluded from maintaining this action by reason of its failure to procure a certificate of authority to transact business in Wisconsin, this brings us to the most-important question on this appeal, namely: Was the trial court correct in granting an injunction under the authority of secs. 103.51 through 103.62, Stats. 1959, against the defendant union's picketing?

The trial court stated that there was no labor dispute existing in the case at bar. Moreover, it held that even if a labor dispute existed it was in Canada and not in Wisconsin.

Sec. 103.62 (3), Stats. 1959, defines "labor dispute" as follows:

"(3) The term 'labor dispute' means any controversy between an employer and the majority of his employees in a collective bargaining unit concerning the right or process or details of collective bargaining or the designation of representatives. Any organization with which either the employer or such majority is affiliated may be considered a party to the labor dispute. The provisions of this subsection shall supersede any provision of the statutes in conflict therewith."

Sec. 103.62 (3), Stats., necessarily means that there is a disagreement between the employer and the union in a col-

lective-bargaining agreement. As this court held in *Laundry, etc., Local 3008 v. Laundry Workers International Union* (1958), 4 Wis. (2d) 542, 91 N. W. (2d) 320, at page 552:

"Under the definition of labor dispute contained in sub. (3) of sec. 103.62, Stats., as it now stands after the 1939 amendment, *it is essential* that there be a controversy between an employer and a majority of his employees relating to collective bargaining or representation." (Emphasis ours.)

Under Canadian law, the C.M.U., not the S.I.U., is the union in the collective-bargaining agreement. There is no disagreement between the employer, Upper Lakes, and the union, C.M.U. Therefore, there cannot be a labor dispute as defined by sec. 103.62 (3), Stats., between the plaintiff and the defendant union, S.I.U.[2]

An injunction against picketing may be issued by the trial court if there is no labor dispute, if the picketing involved

---

[2] It is contended that the provisions of sec. 103.62 (1), Stats. 1959, add circumstances under which a labor dispute may be found to exist beyond those set forth in sec. 103.62 (3) quoted above. The section reads as follows:

"(1) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in a single industry, trade, craft, or occupation; or who are employees of one employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is (1) between one or more employers or associations of employers and one or more employees or associations of employees; (2) between one or more employers or associations of employers and one or more employers or associations of employers; or (3) between one or more employees or associations of employees and one or more employees or associations of employees; or when the case involves any conflicting or competing interests in a "labor dispute" (as defined in sub. (3)) of 'persons participating or interested' therein (as defined in sub. (2))."

In *Laundry, etc., Local 3008 v. Laundry Workers International Union, supra,* we held, at page 550:

"When carefully read it will be found that sub. (1) attempts to enumerate the different classes of litigants between whom a labor dispute may be found to exist."

is found to be for an unlawful purpose. This is the ruling in *Vogt, Inc., v. International Brotherhood* (1955, rehearing 1956), 270 Wis. 315, 71 N. W. (2d) 359, 74 N. W. (2d) 749. (Affirmed in 354 U. S. 284, 77 Sup. Ct. 1166, 1 L. Ed. (2d) 1347.)

In that case the court considered the difference between peaceful picketing and picketing for an unlawful purpose. The plaintiff operated a gravel pit in the town of Oconomowoc in Waukesha county. To operate its washed-sand-and-gravel and concrete-mix business it received by truck cement, steel products, and other materials. The defendant unions stationed pickets at the entrance to plaintiff's property on a town road where few people traveled and their picket signs declared that "the men on this job are not 100% affiliated with the A.F.L." Some truck drivers refused to cross the picket line to deliver materials to the plaintiff. Previously the plaintiff's employees had been solicited to join the defendant unions but had refused. The court determined that the trial court should have entered a finding:

" 'That the picketing of plaintiff's premises has been engaged in for the purpose of coercing, intimidating, and inducing the employer to force, compel, or induce its employees to become members of defendant labor organizations, and for the purpose of injuring the plaintiff in its business because of its refusal to in any way interfere with the rights of its employees to join or not to join a labor organization.' " (270 Wis. at p. 321g.)

In substance the court held that the picketing was not conducted for informational purposes but for the purpose of influencing those who were engaged in transporting supplies and materials to and from plaintiff's place of business and "that it was conducted in the hope that these persons would refuse to continue to serve plaintiff and thereby compel it to choose between two alternatives,—permit the continuance of the picketing and suffer the consequent loss of profits and

possibly of its business, or by some means· or other to coerce or intimidate plaintiff's employees to join one of the unions, . . ." (p. 321h.) This picketing was held to be for an unlawful purpose in violation of secs. 111.06 (1) (a), 111.06 (2) (a) and (b), and 111.06 (3), Stats.[3]

In the instant case the trial court found that the picketing was for an unlawful purpose. He stated:

"The reasonable inference to be drawn from the evidence as presented is that the purpose of the picketing testified to in this case was to coerce or intimidate or induce the employer, to wit, Upper Lakes, to compel or induce its employees (who, as the record shows, are members of the Canadian Maritime Union, which has signed an agreement

[3] "111.06   WHAT ARE UNFAIR LABOR PRACTICES. (1) It shall be an unfair labor practice for an employer individually or in concert with others: (a) To interfere with, restrain or coerce his employees in the exercise of the rights guaranteed in sec. 111.04.

"(2) It shall be an unfair labor practice for an employee individually or in concert with others:

"(a) To coerce or intimidate an employee in the enjoyment of his legal rights, including those guaranteed in. sec. 111.04, or to intimidate his family, picket his domicile, or injure the person or property of such employee or .his family.

"(b) To coerce, intimidate, or induce any employer· to interfere with any of his employees in the enjoyment of their legal rights, including those guaranteed in sec. 111.04, or to engage in any practice with regard to his employees which would constitute an unfair labor practice if undertaken by him on his own initiative.

"(3) It shall be an unfair labor practice for any person to do or cause to be done on behalf of or in the interest of employers or employees, or in connection with or to influence the outcome of any controversy as to employment relations any act prohibited by subs. (1) and (2) of this section."

"111.04   RIGHTS OF EMPLOYEES. Employees shall have the right of self-organization and the right to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in lawful, concerted activities for the purpose of collective bargaining, or· other mutual aid or protection; and such employees shall also have the right to refrain from any or all of such activities."

with the plaintiff—Exhibit No. 9 in this case) to become members of the defendant labor organization, and for the purpose of injuring the plaintiff in its business because of its refusal to in any way interfere with the rights of its employees to join or not to join a particular labor organization."

As in the *Vogt Case, supra,* which is still the law in this state, the picketing was not on a public thoroughfare but on a private road and the purpose of the picketing was not for the guidance of the community, the public having no business to conduct at the loading site. It is reasonable to conclude that without the restraining order the plaintiff would have had to choose between two alternatives—permit the picketing to continue and suffer the loss attendant upon the inability to have the ship loaded, or break its contract with the C.M.U. and force its members to join the S.I.U. This is precisely the type of picketing that was regarded as being for an unlawful purpose in the *Vogt Case.*

*By the Court.*—Temporary injunction affirmed.