

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

December 31, 1964

Honorable James A. Morris
District Attorney
Orange County Courthouse
Orange, Texas

Opinion No. C-370

Re: Whether a navigable bayou
located wholly in Orange
County, Texas, is subject
to the provisions of the
River and Harbor Act of
Congress, and also whether
the construction across
said bayou of a fixed span
bridge with a vertical
clearance of 35 feet is
taking of property for
which the State or County
would be liable to an up-
stream landowner whose
ships require a minimum
vertical clearance of 55
feet.

Dear Mr. Morris:

You have requested an opinion from this office on the
following matters:

Whether a navigable bayou located wholly in
Orange County, Texas, is subject to the provisions
of the River and Harbor Act of Congress, and also
whether the construction across said bayou of a
fixed span bridge with a vertical clearance of 35
feet is taking of property for which the State or
County would be liable to an upstream landowner
whose ships require a minimum vertical clearance
of 55 feet.

Your opinion request shows that the State Highway Depart-
ment has proposed to replace a turn style bridge across Cow
Bayou with a fixed span bridge with vertical clearance for
shipping of at least 35 feet. It is the further understanding
of this writer that the State Highway Department is in the
process of getting this proposed bridge approved by the Corps
of Engineers. Your correspondence also shows that there is
under construction a shipyard upstream from said proposed
bridge, and that the landowner's ships require a vertical
clearance of 55 feet in order to pass unobstructed from said
shipyard to the Gulf of Mexico.

In answer to your question concerning whether the provisions of the River and Harbor Act of Congress applies to Cow Bayou, a navigable stream, the United States Supreme Court in Gilman v. Philadelphia, 70 U.S. 96 (1866) held that the commerce clause of the Federal Constitution furnishes the justification for the superior control of navigable streams by the Federal Government.

Now turning our attention to the question whether the State of Texas or Orange County would be liable for damages due to the construction of the proposed fixed span bridge, when and if approved by the Corps of Engineers, the United States Supreme Court in Gilman v. Philadelphia, supra, in upholding a decision in which a Plaintiff sought to enjoin the construction of a bridge without a draw, stated:

"It must not be forgotten that bridges, which are connecting parts of turnpikes, streets, and railroads, are means of commercial transportation, as well as navigable waters, and that commerce which passes over a bridge may be much greater than would ever be transported on the water it obstructs."

The same court in a later opinion, Miller v. Mayor of New York, 109 U.S. 971 (1883), a suit to restrain the erection of a bridge between the cities of New York and Brooklyn because vessels engaged in foreign commerce would have to strike part of their masts due to the vertical clearance and thus increase their towage fee, held:

"Every public improvement, whilst adding to the convenience of the people at large, affects, more or less injuriously, the interest of some . . . Every railway in a new country interferes with the business of stage coaches and sideway taverns; and it would not be more absurd for their owners to complain of and object to its construction than for parties on the banks of the East River to complain and object to the improvements which connects the two great cities on the harbor of New York."

The Court in United States v. 412,715 Acres of Land, Contra Costa County, California, 53 F.Supp. 143 (N.D. Calif. 1943) at page 148 stated:

". . . In controlling, improving, and regulating, the navigability of waters the Government traditionally acts for the benefit of the navigating public.

Unquestionably, it may deepen channels, widen
streams, erect lighthouses, build bridges,
construct dams, and make similar improvements
without compensating the owners of land subject
to the navigation servitude. All these things
are clearly in aid of the 'greatest public
utility' . . ." (Emphasis added.)

The Supreme Judicial Court of Maine in Frost v. Washington
County Ry. Co., 51 A. 806 (MaineSup.Ct. 1901), a case concerning
the closing of a channel to navigation by the construction of a
railroad trestle 3/4 mile from the plaintiff's property in which
plaintiff claimed he had a cause of action against the railroad
company for injury to his property and business, held:

"This claim cannot be sustained. The only
right of the plaintiff interferred with by the
defendant company was his right of navigation by
water in and out of the cove through the channel.
This right of the plaintiff, however, was not his
private property nor even his private right. It
could not be bought, sold, leased, or inherited.
He did not earn it, create it, or acquire it. He
did not own it as against the sovereign. The right
was the right of the public, the title and control
being in the sovereign in trust for the public and
for the benefit of the general public, and not for
any particular individual. The plaintiff only
shared in the public right. He had no right against
the public. The sovereign had the absolute control
of it, and could regulate, enlarge, limit, or even
destroy it, as it might deem best for the whole
public; and this without making or providing for
any compensation to such individuals as might be
inconvenienced or damaged thereby . . . If, in the
judgment of the sovereign, a railroad across a
navigable channel of water, and completely obstruct-
ing its navigation, is of more benefit to the public
than the navigation of the channel, it has the
unrestricted power to thus close the channel to
navigation, without making compensation to those who
had been wont to use it. Every individual making
use of a merely public privilege must bear in mind
that he may be lawfully deprived of that privilege
whenever the sovereign deems it necessary for the
public good, and he must order his business accord-
ingly.

". . . We regret that the plaintiff has been
damaged by this new railroad being lawfully built
across the channel he was wont to use, but he is
only one of many thousands who are being individ-
ually damaged every day by the frequent lawful
changes in the means and methods of manufacture
and commerce, and yet cannot be said to be wronged
by illegal acts."

The Texas Supreme Court in Chicago, R.I.&G. Ry. Co. v.
Tarrant Co. Water Control & Imp. Dist., 123 Tex. 432, 73 S.W.2d
55 (1934) at page 67 stated:

"'Any proper exercise of the powers of govern-
ment, which does not directly encroach upon the
property of an individual, or distrub him in its
possession or enjoyment, will not entitle him to
compensation, or give him a right of action.
("Incidental damages to property resulting from
governmental activities, or laws passed in the pro-
motion of the public welfare, are not considered a
taking of the property for which compensation must be
made.") If, for instance, the State, under its power
to provide and regulate the public highways, should
authorize the construction of a bridge across a
navigable river, it is quite possible that all pro-
prietary interest in land upon the river might be
injuriously affected; but such injury could no more
give a valid claim against the State for damages,
than could any change in the general laws of the State,
which, while keeping in view the general good, might
injuriously affect particular interests. . . ."
(Emphasis added.)

Based upon the above authorities, it is, therefore, our
opinion that the Federal Government has a superior control of
navigable streams. It is also our further opinion that the
State, after approval by the Corps of Engineers, may construct
a highway bridge over a navigable stream and an upstream land-
owner, even if his access to the Gulf of Mexico is obstructed,
has no such right under the Constitution that he should be com-
pensated for any loss of access from his upstream property to
the Gulf of Mexico resulting from the construction of a highway
bridge. This opinion does not discuss whether the new bridge
would be an aid to navigation. See Opinion No. C-340.

## SUMMARY

The Federal Government has superior control of navigable streams.

The obstruction of access rights of an up-stream landowner to the Gulf of Mexico by construction of a highway bridge is not a taking of property under the Constitution of Texas because the loss of access is only an incidental damage and noncompensable.

Yours very truly,

WAGGONER CARR
Attorney General of Texas

CHARLES R. LIND
Assistant Attorney General

CRL:ca

APPROVED:

OPINION COMMITTEE:

W. V. Geppert, Chairman
Bill Osborn
Grady Chandler
W. O. Shultz
Arthur Sandlin

APPROVED FOR THE ATTORNEY GENERAL
BY:  Stanton Stone