108 So.2d 318 (1959)
August M. CARMAZI and Lester M. Muhn, Appellants,
v.
BOARD OF COUNTY COMMISSIONERS OF DADE COUNTY, Florida, and Central and Southern Florida Flood Control District, Appellees.
Jesse D. HAROLD and Mary E. Harold, his wife, Rudolph R. Radinse and Hilda E. Radinse, his wife, Dave Anderson, Jr., and Jane G. Anderson, his wife, A.L. Shirley and Grace A. Shirley, his wife, Carl Flock and Vera Pierce Flock, his wife, Walter C. McKelvey and Velma M. McKelvey, his wife, Robert McKay and James Pumo, Appellants,
v.
CENTRAL AND SOUTHERN FLORIDA FLOOD CONTROL DISTRICT, Appellee.
Nos. 58-483, 58-484.
District Court of Appeal of Florida. Third District.
January 6, 1959.
Rehearing Denied January 28, 1959.
*320 Charles J. Bodner, Miami, for appellants August M. Carmazi and Lester M. Muhn.
Walton, Lantaff, Schroeder, Atkins, Carson & Wahl and John H. Wahl, Jr., Miami, for appellants Jesse D. Harold et al.
Robert M. Deehl, Miami, for appellant Robert McKay.
Darrey A. Davis and Thomas C. Britton, Miami, for appellee Bd. of County Com'rs of Dade County.
Sturrup & Gautier, Miami, for appellee Central and Southern Florida Flood Control Dist.
HORTON, Judge.
These appeals were originally lodged in the Supreme Court of Florida. By an opinion and order of that court, Carmazi v. Board of County Commissioners, Fla. 1958, 104 So.2d 727, 728, it was held that jurisdiction was improvidently invoked and the cause was transferred to this court.
These appeals are from a final decree adverse to the appellants, Carmazi and Muhn, who were the original plaintiffs, and Harold, et al., who were added as additional parties "counter-defendant". The final decree found no encroachment upon the appellants' property rights as a result of a proposed dam to be located downstream from the appellants' waterfront property on Little River, a navigable stream.
The facts involved in this suit are sufficiently set forth in the order of transmittal, Carmazi v. Board of County Commissioners, supra, from which we quote:
"Little River is a navigable stream running through the City of Miami and emptying into Biscayne Bay. A number of years ago Dade County constructed a dam across the river in the vicinity of Northwest 2nd Avenue. Appellants Carmazi and Muhn owned property abutting the river west of and upstream from the dam. The effect of the dam was, of course, to prevent these two appellants from reaching the waters of Biscayne Bay from their property by boat. In 1956, Carmazi and Muhn filed suit asking the court to adjudicate their property rights and to award them damages against Dade County because of the construction of the dam. Pending this suit appellee Central and Southern Florida Flood Control District, hereinafter referred to as the Flood Control District, was permitted to intervene on the basis of a petition that the Flood Control District contemplated constructing a similar dam further downstream. The effect of this dam would prevent the other appellant property owners from reaching the waters of Biscayne Bay by boat from their property which also was adjacent to Little River.
"On August 29, 1956, the Chancellor ruled in favor of Dade County as against appellants Carmazi and Muhn. He dismissed their complaint with prejudice and reserved jurisdiction to consider the matter as between all appellants and the Flood Control District. Inasmuch as appellants Carmazi and Muhn did not appeal from the decree of August 29, 1956, until October 18, 1957, the Board of County Commissioners of Dade County has heretofore been dismissed from this appeal. The decree of August 29, 1956, was final insofar as Dade County was concerned.

*321 "Finally, on August 23, 1957, the Chancellor considered the matter on the basis of the intervening complaint of the Flood Control District which sought a declaration of rights as between the District and all parties to the litigation. The purpose of this intervening complaint was to have the Chancellor determine whether the owners of property adjoining Little River were vested with any property rights that would be impinged upon by the construction of the proposed dam by the Flood Control District. The Chancellor concluded that the Flood Control District had the power to construct the dam; that it was for a public purpose; that its construction involved no abuse of discretion by the District; and that the abutting property owners were not vested with a property right that would require payment of damages by the Flood Control District as a result of their being barred from passage by boat from their property into the waters of Biscayne Bay. * * *"
The chancellor further retained jurisdiction of the cause for the purpose of determining damages if the proposed dam should result in the flooding of the appellants' property.
As was pointed out above, the Board of Commissioners of Dade County is no longer a party to this appeal. Our review is directed to the chancellor's decree holding, in effect, that the Flood Control District had the power to construct the dam; that it was for a public purpose; that it did not involve an abuse of administrative discretion; and that abutting property owners had no vested property rights that would require compensation in damages.
The appellants have challenged the authority of the District to erect the proposed dam upon the assertion that approval or consent had not been given to its erection by the Secretary of War pursuant to 33 U.S.C., U.S.C.A., § 401. This section was amended by § 205(a), Chapter 343, Title II, 61 Stat. 501 (July 26, 1947), wherein the title of Secretary of War was changed to Secretary of Army. The plans and specifications of the dam in question reflect the approval of the District Engineer of the Corps of Engineers, U.S. Army. A witness for the District, Edwin W. Eden, Jr., a civil engineer for the U.S. Army, testified that the plans and specifications had also been approved by the Division Engineer. Under regulation 4215.10 of the Department of Army, it is doubtful whether the approval of the Chief of Engineers was required for this dam. In any event, the record discloses that the appellants have failed to carry the burden of proving that proper authority was not granted.
The appellants' second contention alleges an abuse of administrative discretion in locating the dam in question. At the outset, we must observe that the general authority for the construction of dams by the Central and Southern Florida Flood Control District is § 203, Chapter 771, Title II, 62 Stat. 1171 (June 30, 1948). Title II is cited as the "Flood Control Act of 1948" (§ 209) and, insofar as it affects Central and Southern Florida, it adopts the report of the Chief of Engineers, U.S. Army, otherwise designated House Document No. 643. Paragraph 59(e) of that report specifically recommends control structures on Little River (and other waterways in Dade County) to "provide for flood control and protection, water control, and alleviation of salt water encroachment". The legislative purpose in creating these preventive measures, as stated in 33 U.S.C., U.S.C.A., § 701a, has been found to be a necessary and proper activity of the federal government to control a menace to the national welfare. The appellants do not challenge the constitutionality of these acts.
The federal statute authorizing the construction of this dam provides that the work shall be done "* * * under the direction of the Secretary of the Army and the supervision of the Chief of Engineers in accordance with the plans in the respective reports hereinafter designated *322 and subject to the conditions set forth therein * * *." The plans attached to House Document No. 643 reflect the proposed erection of dam S-27 (the dam in question) on Little River. The exact location on the river is not designated with any degree of certainty and thus our review is necessarily limited to the alleged abuse of discretion by the District, acting in concert with the Corps of Engineers, in its proposal to place the dam at the location in question. Our review of the record discloses an adequate basis for the proposed location. Scientific data had been gathered for some time prior to the selection of the dam site. This data, as explained by many qualified engineers, establishes the need for the dam at the site in question. There has been no showing of any action by the governmental agencies which is arbitrary or capricious. The burden is upon the landowners to establish that the placing of the dam on the proposed sited is without an adequate basis and in this they have failed.
The final point presented by the appellants concerns the effect of the dam after it is erected. It is their position that they will be deprived of their property rights for which just compensation is guaranteed under the state and federal constitutions. The alleged property right they seek to protect is the right of passing by boat from their property to the adjacent waters of Biscayne Bay. There is no dispute as to the fact that such navigation will be prohibited by the proposed dam. Conceding this point, we are faced with the question of whether or not this right of navigation which the property owners now enjoy is a property right which is within the purview of the constitutional protection. The chancellor held that it was not, and in this we concur.
Riparian rights in Florida have been the subject of little litigation with the result that they are somewhat broadly and inexactly stated. Webb v. Giddens, Fla. 1955, 82 So.2d 743. See also Hunt, Riparian Rights in Florida, 8 U.Fla.L.Rev. 393 (1955); Maloney & Plager, Florida's Streams  Water Rights in a Water Wonderland, 10 U.Fla.L.Rev. 294 (1957); Draper, Riparian Rights and Public Easements, 12 Fla.L.J. 79 (1938). By legislative enactment, (§ 271.09, Fla. Stat., F.S.A.) riparian rights are defined as follows:
"Riparian rights are those incident to land bordering upon navigable waters. They are rights of ingress, egress, boating, bathing and fishing and such others as may be or have been defined by law. Such rights are not of a proprietary nature. They are rights inuring to the owner of the riparian land but are not owned by him. They are appurtenant to and are inseparable from the riparian land. The land to which the owner holds title must extend to the ordinary high water mark of the navigable water in order that riparian rights may attach. Conveyance of title to or lease of the riparian land entitles the grantee to the riparian rights running therewith whether or not mentioned in the deed or lease of the upland."
In substance, this amounts to a right of a landowner to use the water adjacent to his property and to be guaranteed the right of ingress to and egress from his property to the water adjacent thereto. Ferry Pass Inspectors' & Shippers' Ass'n v. White River Inspectors' & Shippers' Ass'n, 57 Fla. 399, 48 So. 643, 22 L.R.A., N.S., 345; Broward v. Mabry, 58 Fla. 398, 50 So. 826; Merrill-Stevens Co. v. Durkee, 62 Fla. 549, 57 So. 428; Thiesen v. Gulf, F. & A. Ry. Co., 75 Fla. 28, 78 So. 491, L.R.A. 1918E, 718; Duval Engineering & Contracting Co. v. Sales, Fla. 1954, 77 So.2d 431. On the other hand, a right of navigation is a right common to the public in general. Riparian owners acquire no additional rights to navigation other than those shared concurrently with the public. Silver Springs Paradise Co. v. Ray, 5 Cir., 50 F.2d 356; Thiesen v. Gulf, F. & A. Ry. Co. and Ferry Pass Inspectors' *323 & Shippers' Ass'n v. White River Inspectors' & Shippers' Ass'n, supra. See also Frost v. Washington County R. Co., 96 Me. 76, 51 A. 806, 59 L.R.A. 68; Farnham, Water and Water Rights, Vol. I, § 29. In the instant case, the appellants are complaining of the fact that once access is had to the water adjacent their property, they cannot navigate to Biscayne Bay. This amounts to a deprivation of a right of navigation which will affect the public as a whole. The eminent domain statutes protect only private rights; not rights which accrue to the public as a whole. See § 73.01, Fla. Stat., F.S.A. In Thiesen v. Gulf, F. & A. Ry. Co., supra, [75 Fla. 28, 78 So. 501] the Supreme Court of Florida said:
"In so far as the declaration alleges the right of ingress and egress to and from the lot over the waters of the bay, it states a common-law right appertaining to riparian proprietorship. The common-law riparian proprietor enjoys this right, and that of unobstructed view over the waters, and in common with the public the right of navigating, bathing, and fishing * * *." [Emphasis supplied.]
The above quoted section recognizes the right of the riparian landowner to navigate, bathe and fish in the bay, and observes that this right is held in common with the public.
The appellants rely heavily upon the decision of the Supreme Court of Florida in Webb v. Giddens, supra, and urge that the same is determinative of their right to prevent the District from denying them access to Biscayne Bay and other connecting navigable waters. In the Webb case, the landowner's property bordered on an arm of Lake Jackson, a landlocked, but navigable, body of water. When the property was acquired, the landowner had access to the main body of the lake under a bridge which spanned the arm of the lake. The State Road Department replaced the bridge with a fill which completely spanned the arm of the lake, cut off the landowner's access to the main body of the lake, and interfered with his boat renting business. The Supreme Court affirmed the chancellor's ruling that the new fill restricted the owner's right to navigate in the main body of the lake and declared that such right could not be denied as it was a "practical incident of his riparian proprietorship." [82 So.2d 745]
We have carefully considered the Webb case and admittedly the facts are very similar to those presented in the instant case. At first blush it would seem that the court appeared to expand the right of ingress and egress as previously stated in the Thiesen case into a right to navigate. However, the court cited with approval the principle in the Thiesen case and observed that riparian rights were a field of law "which is unusually dependant upon the facts and circumstances of each case." The court did not overrule, recede from, or attempt to modify the principle of the Thiesen case, nor did it attempt to distinguish between the two cases. We conclude that the Supreme Court's decision in the Webb case was premised upon equitable grounds due to the unusual facts and circumstances existent in that case. The views expressed in the Thiesen case, as to the common right of navigation, are supported by the majority of decisions as well as text writers in this country and we conclude that they are still the law in this state.
The necessity for the dam has been found to be in the public interest by a solemn pronouncement of the Congress of the United States. Certainly, the erection of this and other dams will drastically curtail or extinguish the ability of property owners bordering on the streams and bodies of water affected to navigate these streams and bodies of water. However, it has long been recognized that governmental functions, although they may deprive private interests of certain privileges, are justified as a necessary exercise of the police power for the benefit of all of the public. In such cases, the rights of those *324 affected must give way to the benefits which accrue to the public as a whole. Cf. City of Miami v. Girtman, Fla.App. 1958, 104 So.2d 62; and Florida State Turnpike Authority v. Anhoco Corporation, Fla.App. 1958, 107 So.2d 51,
The appellee, Flood Control District, by cross-assignment, urges that the chancellor erred in retaining jurisdiction to determine at a future date any damages that might be sustained by the riparian landowners from temporary, permanent or periodic flooding of their lands as a result of the construction or operation of the dam. We conclude this contention is without merit as being premature and any discussion on our part would be purely academic. The nature, as well as the extent, of future flooding, if any, would necessarily determine the right to compensation.
Accordingly, the decree is affirmed.
CARROLL, CHAS., C.J., and PEARSON, J., concur.