206 So.2d 69 (1968)
STATE of Florida ex rel. Thomas W. WILCOX, Henry F. Erfurt, John G. Ellis, Jr., Charles A. Baldwin, Vernon Stanford, Frederick M. Armstrong, Paul L. Chell, David E. Barns, Herbert R. Moss and George Johnson, Appellants,
v.
T.O.L., INC., a Corporation Existing under the Laws of the State of Florida, Appellee.
No. 1189.
District Court of Appeal of Florida. Fourth District.
January 16, 1968.
*70 Palmer W. Collins, of Collins & Clark, Indian Harbour Beach, for appellants.
Robert L. Nabors, of Crofton, Holland, Starling & Goshorn, Titusville, for appellee.
GONZALEZ, JOSE A., Jr., Associate Judge.
Appellants are boat owners and yachtsmen who own property abutting certain waterways in Brevard County, Florida. These dedicated public waterways flow into a larger waterway known as the Mosquito Control Canal upon which they have normally operated their boats and thereby gained access to the Banana River and the sea.
They appeal a final decree dismissing their action to enjoin an alleged public nuisance, to wit: The construction by a private corporation of a fixed span bridge across said canal.
This construction will effectively close the northern terminus of the Mosquito Canal to most marine traffic, although access *71 to the ocean will continue to be available through the southern end.
The facts disclose that the Mosquito Control Canal runs north and south and was dug by Brevard County across an area of uninhabited mangrove swamp in 1954. Lateral drainage ditches running east and west were also dug about every half mile. The canal proper is some 100 feet wide and has a depth of 14 to 18 feet.
Subsequently, a number of residential subdivisions were platted in the area which bordered the main canal and other newly created waterways. The platted waterways were specifically dedicated to public use.
Appellants purchased waterfront homes in these subdivisions and have been accustomed to using these platted waterways or canals as well as the Mosquito Control Canal for boating purposes.
The canal has been used continuously and extensively by appellants and the public generally for both pleasure and commercial navigation since its construction in 1954.
In 1962, Tam-O-Lark Corporation granted an easement over the canal to Brevard County fully vesting it with rights "* * * to use, maintenance, and operation of the said mosquito drainage control canal, * * *"
In 1965, Appellee, T.O.L., Inc., platted a subdivision known as "The Moorings" along the west bank of the canal and in 1966 began construction of the fixed span bridge which is the subject of this litigation.
This improvement was required by the Board of County Commissioners of Brevard County so as to give access to a sewage treatment plant to be constructed on the west side of the canal by appellee. This plant will provide sewer service to the proposed subdivision.
The construction of the bridge and erection of the sewer plant is a prerequisite to approval of appellee's proposed plat by the Board of County Commissioners.
A performance bond was furnished by appellee conditioned upon completion of the improvement as required by law. See J.T. Newton Co. v. Martin Develop. Co. of Cocoa Beach, Florida, Fla.App. 1966, 193 So.2d 464, for the statutory authority for the performance bond requirement and the purpose thereof.
The bridge upon completion will become public property and public thoroughfare.
Appellee owns the land on both the east and west sides of the canal but, for all that appears, does not own the land underlying the canal.
In August, 1966, appellee began construction of the bridge and this suit followed.
Appellants maintain that the Mosquito Canal is a permanent, navigable public waterway and that the proposed bridge constitutes a public nuisance which will daily interfere with their right to use the canal for navigation and for marine ingress and egress to their respective properties.
The parties agree that no question of prescriptive rights is involved.
Appellee argues that it is constructing the bridge in question pursuant to the express mandate and requirement of the Board of County Commissioners of Brevard County and hence the structure cannot be deemed a public nuisance.
Public and navigable waterways are public highways upon which the public is entitled to travel either for business or pleasure. See Bucki v. Cone, 1889, 25 Fla. 1, 6 So. 160.
Assuming arguendo that the waterway in question is indeed a public navigable waterway, it does not follow that appellants have a perpetual and inalienable right to navigate thereon.
The government, through the exercise of the police power, may impose reasonable *72 restrictions on the use of property in the interest of public health, safety and welfare and the enjoyment of all rights and property are subject to a valid exercise of this power. Sharrow v. City of Dania, Fla. 1955, 83 So.2d 274; City of Miami Beach v. Ocean and Inland Co., 1941, 147 Fla. 480, 3 So.2d 364.
Admittedly, the public right of free navigation upon the public waters of this state is protected by law. See Alden v. Pinney, 1869, 12 Fla. 348; 56 Am.Jur., Waters, § 218; see also F.S. Sec. 861.02, F.S.A. 1965, Obstructing watercourse and F.S. Sec. 861.05, F.S.A. 1965, Obstruction to navigation by bridges. This protection, however, cannot be extended to mean that the exercise of this right cannot be properly regulated or limited under the police power in the interest of the general welfare.
The possession and enjoyment of all rights is subject to the valid exercise of the police power which is an aspect of sovereignty, and all persons and property are subject to restraints and burdens necessary to secure the comfort, welfare and safety of the people. Sharrow v. City of Dania, supra.
In this instance, a portion of the police power of the state has been delegated by statute to a particular public body.
A county has the right to open and close public roads and highways where necessity dictates on a temporary or a permanent basis, Hewitt v. Menees, Fla. 1958, 100 So.2d 161, and the general authority of the boards of county commissioners over the location of public roads in their respective counties has been held to be plenary. Harwell v. Hillsborough County, 1933, 111 Fla. 361, 149 So. 547.
The law gives the county commissioners of the various counties powers of general superintendence and control over the county roads and structures within their respective counties, and they are expressly authorized to establish new roads and change old ones. F.S. Sec. 336.02, F.S.A. 1965.
Likewise they are authorized to construct, control and operate bridges on county roads over water in and bounding their respective counties or to acquire any bridge in said counties by condemnation or otherwise. F.S. Sec. 336.47, F.S.A. 1965.
In the planning and construction of county roads and bridges discretion must be vested somewhere. This discretion has been vested by law in the boards of county commissioners of the various counties. Within the area of their statutory authority these public boards exercise their discretion to devise plans and select sites to best serve the public need. When their plans do not exceed lawful authority they should be upheld since the courts have nothing to do with discretionary matters and will not on review substitute their judgment for that of the respective boards. Broward County Rubbish Contractor's Assn. v. Broward County, Fla.App. 1959, 112 So.2d 898; Davis v. Keen, 1939, 140 Fla. 764, 192 So. 200. See also Webb v. Hill, Fla. 1954, 75 So.2d 596.
The necessity for the bridge has been determined. While its erection will undoubtedly drastically curtail the public right of navigation upon the canal, nevertheless, that right is not superior to the public interest as concerns public health, or public travel upon the land.
When public rights or public needs come in conflict, it is for the public officer or agency cloaked with discretionary authority to exercise that authority by adopting a position of public policy seeking as its end the greatest and highest public good.
The Board of County Commissioners of Brevard County has determined the public policy of that county as concerns the construction of the bridge in question after due regard to all considerations.
The wisdom of their decision is certainly fairly debatable.
*73 It is well recognized that governmental functions, although they may deprive private interests of certain privileges, are justified as a necessary exercise of the police power for the benefit of all the public. In such cases, the rights of those affected must give way to the benefits which accrue to the public as a whole. Carmazi v. Board of County Commissioners of Dade County, Fla.App. 1959, 108 So.2d 318.
It is equally true that governmental functions, although they may interfere with certain established public rights, are nevertheless justfied where they constitute a legal and constitutional use of the police power of the state properly and reasonably exercised pursuant to law.
It would be anomalous, indeed, if the public use to which the canal in question was allegedly dedicated was so unduly restricted as to limit it to a particular public use to the exclusion of other equally worthy public purposes.
A particular public easement may be imposed upon land already subject to a different public easement even in the absence of express legislative authority where the subsequent use is for a public purpose of greater or paramount importance which cannot be accomplished in any other practical way, or where the subsequent use will not materially interfere with the operation of the existing one.
Indeed, in the absence of some statutory provision expressly or by implication forbidding it, property devoted to one public use may under general statutory authority be taken for another public use, where the taking will not materially impair or interfere with, or is not inconsistent with, the use already existing, and it is not detrimental to the public. It is not material that some inconvenience may result to the prior user, if the conditions are such that the two uses can stand together. City of Dania v. Central and Southern Florida Flood Control Dist., Fla.App. 1961, 134 So.2d 848.
In this instance, the statutes prohibiting the obstruction of the navigable waters of this state must yield to the overriding public policy and necessity announced by the board of county commissioners in the exercise of the police power and pursuant to statutory authority.
The bridge in question does not materially impair or interfere with appellants' right to navigate upon the remaining portions of the canal, nor does it prevent or inhibit access to the ocean since the southern terminus is still open and available to public use.
The uses are compatible, the commission has acted lawfully, and the circumstances, therefore, do not warrant an injunction to restrain the lawful erection of a bridge authorized by the county across this navigable canal. Tampa Southern R. Co. v. Nettles, 1921, 82 Fla. 2, 89 So. 223.
Accordingly, the final decree appealed from is
Affirmed.
WALDEN, C.J., and CROSS, J., concur.