407 So.2d 189 (1981)
GAME AND FRESH WATER FISH COMMISSION, Colonel Robert M. Brantley, Executive Director, George R. Langford, Julian V. Smith, Sr., Julian Vereen Smith, Jr., Fincher Williams Smith, Mallory E. Horne, W.C. Vereen, Jr., Robert Fokes, James J. Richardson, Andrew M. Beverly, Ralph E. Proctor, Jr., W. Stanley Proctor, Bryan W. Robinson, A.G. Clements, Sam Perry, James C. Whelchel, Hoyt H. Whelchel, R.B. Wright, Jr., F.R. Pidcock, III, John M. Carlton, Jr., and S.G. McCall, Appellants,
v.
LAKE ISLANDS, LTD., a Florida Limited Partnership, Madison M. Mosley, W.M. Hildebrandt, and Albert A. Simpler, III, Appellees.
No. 56868.
Supreme Court of Florida.
April 16, 1981.
Rehearing Denied January 11, 1982.
Jim Smith, Atty. Gen., and Carol Z. Bellamy, Asst. Atty. Gen., Tallahassee, G. Kenneth Gilleland, Tallahassee, and James J. Richardson of Richardson Law Offices, Tallahassee, for appellants.
Benjamin K. Phipps, Tallahassee, for appellees.
*190 OVERTON, Justice.
This is an appeal from a trial court judgment holding chapter 65-1841, Laws of Florida, and the implementing administrative rule, unconstitutional as applied to appellees. Chapter 65-1841 authorizes the Game and Fresh Water Fish Commission to regulate the use of motorboats on the public waters of Lake Iamonia in Leon County.[1] By rule 16E-14.02, Florida Administrative Code, the commission invoked this authority to absolutely prohibit the use of motorboats, including airboats, on the lake during duck hunting season.[2] The trial court found the law and the rule to be constitutional as applied to the general public, but to be unreasonable and arbitrary as applied to island owners seeking access to their property. We have jurisdiction under article V, section 3(b)(1) of the Florida Constitution, and we affirm.
Lake Iamonia is a navigable lake in northern Leon County. In it are a number of islands, some of which are owned by appellees. The navigability of the lake is described by the trial court as follows:
3. The shallowness as well as the vegetation upon the lake has made navigation upon the lake difficult. While boat paths have been cut by persons using the lake, they do not provide ready access to some of the islands. For access to some of the islands boats must be poled or an airboat used. As to a few of the islands, the water level is too low for even a poled boat and an airboat is the only method of reaching them.
4. Navigation upon the lake has been made more difficult by a drawdown begun by the [commission] in 1977. This drawdown was deemed necessary because the natural outlet, a sinkhole at the eastern end of the lake, had been dammed off several years earlier. The dam had been constructed to prevent the lake from going periodically dry. Natural fluctuations from completely dry to flood had previously occurred with some regularity for decades, perhaps centuries before. After the dam had had its desired effect of keeping the water in the lake basin, it was discovered that the natural fluctuations were required to maintain the ecology of the lake. The lack of periodic drying out resulted in an "undesirable" plant growth, the white water lily, becoming predominant. The purpose of the drawdown was to allow the lake to again go dry. The hope is that this will result in killing off the white water lily so that more desirable vegetation will return along with open water.
During the 1978 duck hunting season, Lake Islands, Ltd., a limited partnership that owns some of the lake islands, requested from the commission a permit to use airboats on the lake in order to take prospective purchasers out to see the property. When the commission refused, Lake Islands sought and obtained from the circuit court of Leon County a temporary injunction restraining the commission from enforcing its rule against Lake Islands during the hunting season. The court later entered a final judgment requiring the commission to issue permits to the island owners for reasonable use of motorboats and airboats on the lake during the hunting season. In its judgment the trial court found that the rule prohibiting motorboats and airboats on Lake Iamonia during hunting season was not unconstitutional per se as a taking of property without just compensation, but that substantive due process required a regulation *191 not be arbitrary or unreasonable, specifically finding that: "Riparian rights over navigable waters amount in substance to the right of the owner of an island on Lake Iamonia to be guaranteed the right of ingress and egress to his property." The trial court further found that: "[E]ven though the regulation is a reasonable exercise of police power, and in general any restriction it creates constitutional, it is unreasonable and arbitrary not to allow island owners at least some access to their property which is a well established common law right incident to ownership of property." The trial court then directed the commission to grant permits, upon application, to each island owner who applied, allowing them the use of motorboats or airboats for the limited purpose of transportation for egress and ingress to the owner's island.
We agree with this holding. Riparian rights under both common law and Florida statute include the right of ingress and egress. Thiesen v. Gulf, Florida and Alabama Railway, 75 Fla. 28, 78 So. 491 (1918); § 197.228, Fla. Stat. (1979). In Ferry Pass Inspectors' & Shippers' Association v. White's River Inspectors' & Shippers' Association, 57 Fla. 399, 48 So. 643 (1909), this Court, speaking through Chief Justice Whitfield, set forth in detail the rights of riparian owners as follows:
Riparian rights are incident to the ownership of lands contiguous to and bordering on navigable waters. The common-law rights of riparian owners with reference to the navigable waters are incident to the ownership of the uplands that extend to high-water mark. The shore or space between high and low water mark is a part of the bed of navigable waters, the title to which is in the state in trust for the public. If the owner of land has title to high-water mark, his land borders on the water, since the shore to high-water mark is a part of the bed of the waters; and, if it is a navigable waterway, he has as incident to such title the riparian rights accorded by the common law to such an owner.
Among the common-law rights of those who own land bordering on navigable waters apart from rights of alluvion and dereliction are the right of access to the water from the land for navigation and other purposes expressed or implied by law, the right to a reasonable use of the water for domestic purposes, the right to the flow of the water without serious interruption by upper or lower riparian owners or others, the right to have the water kept free from pollution, the right to protect the abutting property from trespass and from injury by the improper use of the water for navigation or other purposes, the right to prevent obstruction to navigation or an unlawful use of the water or of the shore or bed that specially injures the riparian owner in the use of his property, the right to use the water in common with the public for navigation, fishing, and other purposes in which the public has an interest. Subject to the superior rights of the public as to navigation and commerce, and to the concurrent rights of the public as to fishing and bathing and the like, a riparian owner may erect upon the bed and shores adjacent to his riparian holdings bath houses, wharves, or other structures to facilitate his business or pleasure; but these privileges are subject to the rights of the public to be enforced by proper public authority or by individuals who are specially and unlawfully injured. Riparian owners have no exclusive right to navigation in or commerce upon a navigable stream opposite the riparian holdings, and have no right to so use the water or land under it as to obstruct or unreasonably impede lawful navigation and commerce by others, or so as to unlawfully burden or monopolize navigation or commerce. The exclusive rights of a riparian owner are such as are necessary for the use and enjoyment of his abutting property and the business lawfully conducted thereon; and these rights may not be so exercised as to injure others in their lawful rights....
The rights of the public in navigable streams for purposes of navigation are to *192 use the waters and the shores to high-water mark in a proper manner for transporting persons and property thereon subject to controlling provisions and principles of law. The right of navigation should be so used and enjoyed as not to infringe upon the lawful rights of others. All inhabitants of the state have concurrent rights to navigate and to transport property in the public waters of the state. As to mere navigation in and commerce upon the public waters, riparian owners as such have no rights superior to other inhabitants of the state. A riparian owner may use the navigable waters and the lands thereunder opposite his land for purposes of navigation and of conducting commerce or business thereon, but such right is only concurrent with that of other inhabitants of the state, and must be exercised subject to the rights of others. The right of access to the waters from the riparian lands may in general be exclusive in the owner of such lands, but as to the use of the navigable waters and the lands thereunder, including the shore, the rights of riparian owners and of others of the public are concurrent, and subject to applicable rules of law. A riparian owner has a right to enjoin in a proper proceeding the unlawful use of the public waters or the land thereunder including the shore which is a part of the bed, when such unlawful use operates as a special injury to such riparian owner in the use and enjoyment of his riparian lands. In the absence of a valid statute providing otherwise, the injury must relate to riparian lands or business conducted thereon, and not to business conducted on the waters by virtue only of the right of navigation. It is not essential that the unlawful use of the waters or the land thereunder be in actual contact with the lands of the riparian owner, if the lawful use and enjoyment of the riparian holdings are in fact appreciably injured as the proximate result of such unlawful use of the waters or the lands thereunder. In the absence of a valid grant from the state, no riparian owner or other person has an exclusive right to do business upon public waters of the state whether such waters are in front of the land of the riparian owner or not. As the shore or space between high and low water marks is a part of the bed of the navigable waters, one who holds to high-water mark is a riparian owner, and, as such, has common-law riparian rights as incidents to his title to the abutting lands.
Id., 57 Fla. at 402-03, 48 So. at 644-45 (citations omitted; emphasis supplied).
It is a recognized general rule of law that a riparian owner's interest in waterway navigation is the same as a member of the public except where there is some special injury to the riparian owner. See F. Maloney, S. Plager & F. Baldwin, Jr., Water Law and Administration, The Florida Experience (1968). We fully recognized this special injury exception in Webb v. Giddens, 82 So.2d 743 (Fla. 1955). In that case Giddens was the owner of a parcel of land located on a small arm of Lake Jackson in Leon County. He was in the business of renting boats to people who came to fish. To reach the main part of Lake Jackson, his customers had to pass under a wooden state highway bridge that stretched across this arm of the lake. The state road department improved this road by removing the wooden bridge and replacing it with a fill completely spanning the arm and blocking Giddens and his customers from the main part of the lake. The trial court rejected the state road department's contention that one's riparian rights ended when he reached the water and held that the owner had a legal right of access to the main body of the lake for purposes of fishing, hunting, and boating. We approved that lower court decision, holding that one common law riparian right was ingress and egress to and from the water over the owner's land and that the issue was whether the denial of ingress and egress deprived the owner of "a practical incident of his riparian proprietorship." We concluded that Giddens' right of ingress and egress would be virtually meaningless unless he were allowed access to the main body of the lake. The Webb case is discussed as an appropriate *193 illustration of a special injury to a riparian owner in F. Maloney, supra, at 100-04. We agree with the two conclusions reached therein that Webb stands for the following: (1) "for travel over a navigable body of water to be materially obstructed by the state there must be an overriding public interest that justifies depriving either the public or the riparian of the enjoyment of this right," and (2) "whether such an obstruction is called a public nuisance from which the riparian owner sustains special injury, or whether it is called a private nuisance as to him, the riparian owner has the individual right to object and to have the courts hear his objection." Id. at 102.
For the riparian right of ingress and egress to mean anything, it must at the very least establish a protectable interest when there is a special injury. To hold otherwise means the state could absolutely deny reasonable access to an island property owner or block off both ends of a channel without being responsible to the riparian owner for any compensation. A waterway is often the street or public way; when one denies its use to a property owner, one denies him access to his property. This is particularly so in the case of island property. As stated rhetorically in F. Maloney, supra, "What good is access to a thirty-foot-deep channel a hundred yards or so long and blocked at both ends?" Id. at 104. Reasonable access must, of course, be balanced with the public good, but a substantial diminution or total denial of reasonable access to the property owner is a compensable deprivation of a property interest.
To the extent that Carmazi v. Board of County Commissioners, 108 So.2d 318 (Fla.3d DCA 1959), conflicts with our decision in the instant case, it is disapproved. We find Moore v. State Road Department, 171 So.2d 25 (Fla.1st DCA), cert. denied, 177 So.2d 475 (Fla. 1965), is distinguishable upon its facts since there was no denial of the property owners' reasonable access to either their property or to any navigable waters; what was impaired was the access of deep sea ships to the property in question.
In the instant case the trial court concluded that as a matter of law island owners on Lake Iamonia have no reasonable method of transportation to their islands without the use of motorboats or airboats, and made an express finding that poling or paddling a boat to these islands was not reasonable under the circumstances of this cause. Rule 16E-14.02 is an absolute prohibition during part of the year against the only reasonable means of transportation to and from the islands for property owners, and we agree with the trial court in its conclusion that the rule is unreasonable and arbitrary as applied to these property owners.
The rule is, however, constitutional in general application. When the question of ingress and egress of an island property owner is removed, we do not find that the mere restriction on the means of navigation on the lake violates any constitutional rights. See Moore v. State Road Department. We reject the assertion of an unlawful delegation of legislative authority by chapter 65-1841 because of the uniqueness of the constitutionally established Game and Fresh Water Fish Commission and its express, constitutionally directed responsibilities.
For the reasons expressed, the judgment is affirmed.
It is so ordered.
ADKINS, BOYD and McDONALD, JJ., concur.
SUNDBERG, C.J., dissents with an opinion with which ENGLAND and ALDERMAN, JJ., concur.
SUNDBERG, Chief Justice, dissenting.
I must respectfully dissent to that portion of the majority opinion which holds that the act and implementing rule is unreasonable, arbitrary and unconstitutional as applied to island owner appellees. The majority finds the law and rule to be a reasonable exercise of the police power vis-a-vis the general public, but unreasonable as it affects the appellees because it unreasonably limits their common law riparian rights of ingress and egress.
*194 Regrettably, the majority misconceives both the issue and the extent of the right of ingress and egress inuring to riparian ownership. As is clear from both the trial court's judgment and this Court's opinion, the issue is one of navigation across the waters of Lake Iamonia. This case has nothing to do with ingress and egress to and from the uplands from the waters edge, i.e., "access to and from the navigable waters." Merrill-Stevens Co. v. Durkee, 62 Fla. 549, 558, 57 So. 428, 431 (1912). The distinction is crucial, because while the right to ingress and egress is an exclusive right adhering in riparian ownership, the right to navigation is not.
As framed by the pleadings, adjudged by the trial court and held by the majority, the riparian owners enjoy a greater right of navigation across the waters of Lake Iamonia, than does the public in general. This simply is not the law. If the act and regulation is efficacious as to the public in general, then it is valid as applied to the island owners. This is so because the right of a riparian owner to navigation rises no higher than the right of the public in general. "The common-law riparian proprietor enjoys [the right of ingress and egress] and that of unobstructed view over the waters and in common with the public the right of navigating, bathing, and fishing, ..." (Emphasis supplied.) Thiesen v. Gulf, F. & A. Ry. Co., 75 Fla. 28, 58, 78 So. 491, 501 (1917).
The vital distinction between the exclusive right to ingress and egress inuring to a riparian owner and the right in common with the public to navigation is pointed out with clarity by Justice Whitfield in one of the earliest decisions of this Court dealing with the subject of riparian rights, Ferry Pass I. & S. Association v. White's River I. & S. Association, 57 Fla. 399, 48 So. 643 (1909). The clarity and erudition of that discussion is such that it bears repeating in full.
Riparian rights are incident to the ownership of lands contiguous to and bordering on navigable waters. The common-law rights of riparian owners with reference to the navigable waters are incident to the ownership of the uplands that extend to high-water mark. The shore or space between high and low water mark is a part of the bed of navigable waters, the title to which is in the state in trust for the public. If the owner of land has title to high-water mark, his land borders on the water, since the shore to high-water mark is a part of the bed of the waters; and, if it is a navigable waterway, he has as incident to such title the riparian rights accorded by the common law to such an owner.
Among the common-law rights of those who own land bordering on navigable waters apart from rights of alluvion and dereliction are the right of access to the water from the land for navigation and other purposes expressed or implied by law, the right to a reasonable use of the water for domestic purposes, the right to the flow of the water without serious interruption by upper or lower riparian owners or others, the right to have the water kept free from pollution, the right to protect the abutting property from trespass and from injury by the improper use of the water for navigation or other purposes, the right to prevent obstruction to navigation or an unlawful use of the water or of the shore or bed that specially injures the riparian owner in the use of his property, the right to use the water in common with the public for navigation, fishing, and other purposes in which the public has an interest. Subject to the superior rights of the public as to navigation and commerce, and to the concurrent rights of the public as to fishing and bathing and the like, a riparian owner may erect upon the bed and shores adjacent to his riparian holdings bath houses, wharves, or other structures to facilitate his business or pleasure; but these privileges are subject to the rights of the public to be enforced by proper public authority or by individuals who are specially and unlawfully injured. Riparian owners have no exclusive right to navigation in or commerce upon a navigable stream opposite the riparian holdings, *195 and have no right to so use the water or land under it as to obstruct or unreasonably impede lawful navigation and commerce by others, or so as to unlawfully burden or monopolize navigation or commerce. The exclusive rights of a riparian owner are such as are necessary for the use and enjoyment of his abutting property and the business lawfully conducted thereon; and these rights may not be so exercised as to injure others in their lawful rights....
The rights of the public in navigable streams for purposes of navigation are to use the waters and the shores to high-water mark in a proper manner for transporting persons and property thereon subject to controlling provisions and principles of law. The right of navigation should be so used and enjoyed as not to infringe upon the lawful rights of others. All inhabitants of the state have concurrent rights to navigate and to transport property in the public waters of the state. As to mere navigation in and commerce upon the public waters, riparian owners as such have no rights superior to other inhabitants of the state. A riparian owner may use the navigable waters and the lands thereunder opposite his land for purposes of navigation and of conducting commerce or business thereon but such right is only concurrent with that of other inhabitants of the state, and must be exercised subject to the rights of others. The right of access to the waters from the riparian lands may in general be exclusive in the owner of such lands, but as to the use of the navigable waters and the lands thereunder, including the shore, the rights of riparian owners and of others of the public are concurrent, and subject to applicable rules of law. A riparian owner has a right to enjoin in a proper proceeding the unlawful use of the public waters or the land thereunder including the shore which is a part of the bed, when such unlawful use operates as a special injury to such riparian owner in the use and enjoyment of his riparian lands. In the absence of a valid statute providing otherwise, the injury must relate to riparian lands or business conducted thereon, and not to business conducted on the waters by virtue only of the right of navigation. It is not essential that the unlawful use of the waters or the land thereunder be in actual contact with the lands of the riparian owner, if the lawful use and enjoyment of the riparian holdings are in fact appreciably injured as the proximate result of such unlawful use of the waters or the lands thereunder. In the absence of a valid grant from the state, no riparian owner or other person has an exclusive right to do business upon public waters of the state whether such waters are in front of the land of the riparian owner or not. As the shore or space between high and low water marks is a part of the bed of the navigable waters, one who holds to high-water mark is a riparian owner, and, as such, has common-law riparian rights as incidents to his title to the abutting lands.
57 Fla. 399, 402-403, 48 So. 643, 644-45 (citations omitted, emphasis supplied).
Again in Merrell-Stevens Co. v. Durkee, 62 Fla. 549, 57 So. 428 (1912), Justice Whitfield stated:
At common law, all navigable waters and the lands thereunder were held by the sovereign for the benefit of the whole people, and the owner of land abutting on navigable waters had no exclusive right in the waters, below ordinary highwater mark or in the lands under the waters, except the right of access to and from the navigable waters, and rights in the land growing out of accretion or reliction.
62 Fla. 549, 558, 57 So. 428, 431. No statutory rights are involved here. Section 197.228, Florida Statutes (1979), merely recognizes such riparian rights as exist at common law.[1]
*196 The most recent decision to consider the distinction between rights of ingress and egress and rights of navigation is Carmazi v. Board of County Commissioners of Dade County, 108 So.2d 318 (Fla. 3d DCA 1959). In that case riparian owners sought damages for encroachment upon their property rights as a result of a proposed dam to be located downstream from their waterfront property located on a navigable river. The dam would completely deny access by water from their property on Little River in Miami to Biscayne Bay. The court canvassed the earlier decisions of this Court, including those cited herein, and concluded that the riparian owners were entitled to no relief because the dam was in the public interest and the private rights of the owners were no different than those of the public in general to navigation. Hence, there was an appropriate exercise of the police power vis-a-vis the riparian owners. In particular, the court quoted the same excerpt from Thiesen v. Gulf, F. & A. Ry. Co., supra, which is quoted above and noted that:
The above quoted section recognizes the right of the riparian landowner to navigate, bathe and fish in the bay, and observes that this right is held in common with the public.

108 So.2d at 323 (emphasis in original).
The Carmazi court also correctly observed that the views expressed in Thiesen are supported by the majority of decisions as well as text writers in this country and still constitute the law in this state. In doing so the district court confronted the decision of this Court in Webb v. Giddens, 82 So.2d 743 (Fla. 1955). In that case we held that a property owner situate on an arm of Lake Jackson in Leon County was entitled to compensation when the State Road Department replaced a bridge with a fill which cut off the landowner's access to the main body of the lake and interfered with his boat renting business. The district court distinguished the case on the basis that the Webb Court cited with approval the principle in the Thiesen case without overruling or receding from it and concluded that riparian rights were a field of law "which is unusually dependent upon the facts and circumstances of each case." 108 So.2d at 745.
I would not be so charitable. The Webb case to me represents an erroneous interpretation of Thiesen principles under the guise of applying equitable principles. By defining the landowner's navigational access to the main body of the lake as "a practical incident of his riparian proprietorship,"[2] the Court was less than faithful to the principles carefully articulated in Thiesen. There is much mischief in this. Although the Webb decision may have wrought an equitable result just as the result of the majority here may be equitable, nevertheless, such a result-oriented decision does a disservice to a body of law which has a pervasive effect on a state with such an abundance of riparian or littoral lands. See Hayes v. Bowman, 91 So.2d 795 (Fla. 1957). I would recede from Webb v. Giddens.
There remains only to deal with Hayes v. Bowman, which was also relied upon by the trial judge. Although the Hayes decision speaks in terms of "common law riparian rights to an unobstructed view and access to the Channel over the foreshore across the waters toward the Channel"[3] of a navigable bay, a careful analysis of the issue in the case makes it apparent that Justice Thornal was concerned only with the correlative rights between two upland riparian owners and an "equitable distribution" as between them of the submerged lands between the upland and the Channel. The resolution of the case turned on the manner in which one should measure the boundaries *197 of riparian rights as they extend into submerged lands toward the channel of navigable waters. The Court concluded that those boundaries neither need be an extension of the upland property boundaries nor need they run at right angles with the shore line. Hence, the rule was prescribed that "riparian rights of an upland owner must be preserved over an area `as near as practicable' in the direction of the Channel so as to distribute equitably the submerged lands between the upland and the Channel." 91 So.2d at 802. It is obvious that such an equitable distribution can only exist between two upland riparian owners and affects the general public not one whit, because submerged lands while in the hands of the state are held for the benefit of the public in common, including riparian owners. Justice Thornal's citation of Thiesen and Merrill-Stevens with approval in his opinion makes this clear.
Consequently, once the majority finds the act and regulation in the instant case a reasonable exercise of the police power over navigation insofar as the general public is concerned, it must be found reasonable as to the island owners because they enjoy no greater rights to navigation on the lake than does the public in general. I would reverse the judgment of the trial court.
ENGLAND and ALDERMAN, JJ., concur.
NOTES
[1] Chapter 65-1841, Laws of Florida, provides in its entirety:

Section 1. The game and fresh water fish commission is authorized to regulate fully, to the extent of prohibiting, the use of motor-driven boats on the public waters of lakes Iamonia and Jackson in Leon county.
[2] Rule 16E-14.02, F.A.C., provides in pertinent part:

The operation or use of any boat, sled, sea skiff, swamp boat, speed boat or other power boat, pushed, pulled or propelled by air propeller, or any boat propelled by water propeller driven by motor or motors, singly or in the aggregate, is prohibited in Leon County on Lake Iamonia ... at any time from 12:01 AM on the opening day of any open season for taking ducks until 12 midnight of the closing day of any open season for taking ducks.
[1] Section 197.228(1), Florida Statutes (1979), provides:

Riparian rights are those incident to land bordering upon navigable waters. They are rights of ingress, egress, boating, bathing and fishing and such others as may be or have been defined by law. Such rights are not of a proprietary nature. They are rights inuring to the owner of the riparian land but are not owned by him. They are appurtenant to and are inseparable from the riparian land. The land to which the owner holds title must extend to the ordinary high watermark of the navigable water in order that riparian rights may attach. Conveyance of title to or lease of the riparian land entitles the grantee to the riparian rights running therewith whether or not mentioned in the deed or lease of the upland.
[2] 82 So.2d at 745.
[3] 91 So.2d at 801.